UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE S., | Case No.: 20-cv-0240-BGS |
| Plaintiff, | **ORDER:** |
| v. | **(1) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF No. 19];** |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1] | **(2) GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT [ECF No. 20]** |
| Defendant. | [ECF 19-20] |

## I.    INTRODUCTION

Plaintiff Renee S. ("Plaintiff") has filed a Complaint seeking judicial review of the Commissioner of the Social Security Administration's ("Commissioner" or "Defendant") denial of disability insurance benefits under the Social Security Act, (ECF 1), and the Commissioner has filed the Administrative Record.  (ECF 12.)

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021 and is therefore substituted for Andrew Saul as Defendant. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

1

Plaintiff has filed a Motion for Summary Judgment seeking reversal of the final decision denying benefits and an order for the payment of benefits or, in the alternative that the Court remand the case for further administrative proceedings. (EFC No. 19.) Plaintiff argues the Administrative Law Judge ("ALJ") committed reversible error in not including certain restrictions in the opinion of treating physician Dr. Hampshire. (*Id.* at 4-9.) The Commissioner's Opposition to Plaintiff's Motion argues that the ALJ's decision to only give some weight to Dr. Hampshire's opinion and not include all her restrictions was well supported and should be affirmed. (ECF No. 20.) Plaintiff did not file a Reply brief.

After careful consideration of the parties' arguments, the administrative record and the applicable law and for the reasons discussed below, Plaintiff's Motion for Summary Judgment is DENIED and the Commissioner's Cross Motion for Summary Judgment is GRANTED.

## II.    PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on October 27, 2016, with an alleged onset date of March 24, 2016. (AR 257-58.) Plaintiff's Disability Report, completed November 3, 2016, identifies the following conditions that limit her ability to work: diabetes, high cholesterol, neuropathy, and high blood pressure. (AR 297.) Her application was denied. (AR 187-90.) Her subsequent request for reconsideration was also denied. (AR 192 (request for reconsideration), 193-97 (denial on reconsideration).) The denial states that Plaintiff identified high cholesterol, neuropathy, and high blood pressure as conditions that prevented her from working. (AR 193.)

At Plaintiff's request, a hearing before an ALJ was held on September 4, 2018 at which Plaintiff was represented by counsel and testified, along with a Vocational Expert. (AR 199-200 (request for hearing), 109-46 (transcript of hearing).) On January 14, 2019, the ALJ issued a decision finding Plaintiff was not disabled and denied Plaintiff's application for benefits. (AR 17-27.) The Appeals Council denied Plaintiff's request for review on December 10, 2019. (AR 252-54 (request for review), 1-6 (denial).)

### III.    SUMMARY OF ALJ DECISION AND FIVE STEP EVALUATION

The ALJ's decision explains the five-step evaluation process for determining whether an individual has established eligibility for disability benefits and then goes through steps one through four.[2]  (AR 21-22 (explaining steps), 22-27 (analysis of steps one through four)); *see also Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724-25 (9th Cir. 2011) and 20 C.F.R. §§ 404.1520.

### A.    Step One

At step one, the ALJ determines whether a claimant has engaged in "substantial gainful activity."  20 C.F.R. § 1520(a)(4)(i).  Here, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 24, 2016.  (AR 22.)  In reaching this conclusion, the ALJ explains that Plaintiff testified that she worked part time for a few months in 2018, but was unable to continue working because of her peripheral neuropathy.  (AR 22.)  The ALJ then categorizes the 2018 work activity as "an unsuccessful work attempt."  (AR 22.)

### B.    Step Two

At step two, the ALJ determines whether a claimant has a "severe medically determinable physical or mental impairment . . . or combination of impairments that is severe."  20 C.F.R. § 1520(a)(4)(ii).  Here, the ALJ found Plaintiff had "the following

---

[2] In order to qualify for disability benefits, an applicant must show that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death, or that has lasted or can be expected to last for a continuous period of not less than twelve months and the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(1)(A), (2)(A) (defining disability).  An applicant must meet both requirements to be "disabled."  *Id.*  The claimant bears the burden of proving he is disabled through step four.  *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).  At step five, which the ALJ did not reach here, the Commissioner bears the burden of showing the claimant can do other kinds of work that exist in significant numbers in the national economy "taking into consideration the claimant's residual functional capacity, age, education, and work experience."  *Id.*

severe impairments: diabetic and alcoholic peripheral neuropathy; metabolic syndrome with obesity, hypertension, diabetes mellitus, and hyperlipidemia; alcoholic cirrhosis; splenomegaly; history of cholecystitis; duodenitis/GRD; status post banding of esophageal varices; and a history of endometrial hyperplasia status post hysterectomy and bilateral salpingo-oophorectomy." (AR 22.)  However, as to "other medically determinable impairments, including venous thrombosis and pulmonary embolism" the ALJ found "the evidence as a whole, including the clinical records' depiction of their mild or non-existent symptoms and minimal treatment, fail[ed] to demonstrate that they cause more than minimal limitations in the claimant's ability to perform basic work activities." (AR 24.)  The ALJ then goes on to specifically address venous thrombosis and pulmonary embolism with citation to normal scans and lack of symptoms in the record.  (AR 23 (citing AR 499 [Ex 2F at 98]; AR 1395-1728 [Ex 13F]).)

## C.    Step Three

At step three the ALJ considers whether the claimant's impairments meet or equal one or more of the specific impairments or combination of impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1, the listings.  *See* §§ 404.1520(a)(4)(iii), 404.1520(d), 404.1525, 404.1526.  Here, the ALJ considered digestive system and neurological system listings with emphasis on 5.05 (chronic liver disease) and 11.14 (peripheral neuropathy).  (AR 23.)  The ALJ also considered the potential impact of diabetes mellitus and obesity.  (AR 23.)  The ALJ concluded that the "the severity of claimant's impairments, considered singly and in combination, does not meet or medically equal the criteria of any listing." (AR 23.)  The ALJ also found that "[n]o treating or examining physician . . . record[ed] findings equivalent in severity to the criteria of any listed impairment" and the evidence did not "show medical findings that are the same or equivalent to those of any listed impairment."  (AR 23.)

///

///

///

### D.     Residual Functional Capacity

If the claimant does not meet a listing, the ALJ "assess[es] and makes a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(e).  A claimant's RFC is the "most [they] can still do despite [their] limitations" taking into account all medically determinable impairments, including "medically determinable impairments that are not 'severe.'" 20 C.F.R. § 404.1545(a)(1)(2).  The RFC is used at the fourth and fifth steps to determine whether the claimant can do their past work (step four) or adjust to other available work (step five). §§ 404.1520(e)-(f), 404.1545(a)(5).

The ALJ assessed the following RFC for Plaintiff:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except she has the following additional limitations: she can *lift or carry 20 pounds occasionally and 10 pounds frequently*; she can sit for 6 hours and *stand and/or walk for 3 hours* in a normal 8-hour day with normal breaks, and she requires a sit/stand *option from standing or walking after every 15 minutes to sitting for at least 15 minutes*; she cannot push or pull with the bilateral lower extremities; she cannot climb ladders, ropes or scaffolds or walk on uneven terrain; she can occasionally perform all other remaining postural activities of climbing ramps or stairs, balancing, stooping, kneeling, crouch, and crawling; she must avoid concentrated exposure to extreme cold, heat and vibrations; and she must avoid even moderate exposure to hazards such as unprotected heights and dangerous moving machinery.

(AR 23 (emphasis added to restrictions at issue).)  As discussed further below, Plaintiff argues this RFC did not account for the following additional or more limited work restrictions selected on Dr. Hampshire's questionnaire: "1) limitation to low stress jobs; 2) occasional (up to 33% interference in the ability to perform even simple work tasks; 3) need for a sit, stand or walk option at will; 4) sit at least six hours per workday; 5) stand/walk less than two hours per workday; 6) lift and carry less than 10 pounds occasionally; and 7) absenteeism at a rate of one day per month.  (ECF 19-1 at 4-8 (citing

AR 1033-34 (Dr. Hampshire's questionnaire)).)

### E.   ALJ's Evaluation of the Record

The ALJ decision goes on to evaluate Plaintiff's symptom testimony, summarize her medical records and make findings, and evaluate three medical opinions before moving on to step four.

#### 1.   Plaintiff's Symptom Testimony

Plaintiff does not challenge the ALJ's evaluation of her symptom testimony. However, because the ALJ considered Plaintiff's testimony in evaluating the medical evidence and physician opinions, the Court briefly summarizes the ALJ's discussion of her testimony.

The ALJ explains the two-step process to evaluate symptom testimony and finds Plaintiff's impairments could be expected to cause the alleged symptoms. (AR 24.) However, the ALJ goes on to find Plaintiff's statements concerning their intensity, persistence, and limiting effects are "not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 24.)

The decision accurately summarizes her testimony. The ALJ explains that Plaintiff testified that "her neuropathy is her main problem that prevents her from working," and that the neuropathy causes constant pain, numbness, and toe cramping in her feet. (AR 24 (ALJ decision); AR 125-128 (testimony).) The decision explains that she indicated she could remain standing for 10 minutes before needing to sit down, sits for about 14 hours per day, and sometimes needs to elevate her feet if she walks during the day. (AR 24 (ALJ decision); AR 129-131 (testimony).) She denied any problems with her hands except some itchiness. (AR 24 (ALJ decision); AR 127 (testimony).)

After providing a detailed summary of Plaintiff's medical history and making findings as to the impact of those conditions on her based on the medical records (*see infra* IV.B.1.a), the ALJ concludes that "[t]aken together, the claimant's severe impairments, diabetes, neuropathy, gastrointestinal issues, and other health concerns support the less-than-light residual functional capacity assessed above." (AR 25.)

### 2.     ALJ's Discussion of the Medical Evidence

#### a)     Diabetes and Peripheral Neuropathy

The ALJ discusses Plaintiff's history of diabetes and diabetic and alcoholic peripheral neuropathy complicated by noncompliance and lack of health insurance.  (AR 24-25 (citing AR 439, 444 [Ex. 2F at 38, 43]; AR 1243 [Ex. 12F at 132].)  The decision notes improvement as well as periods of uncontrolled diabetes and neurological complications due in part to noncompliance with treatment.  (AR 24 (citing AR 531 [Ex. 2F at 130]; AR 568, 575 [Ex. 3F at 6, 13].)  The ALJ then discusses, with citation to numerous applicable medical records, her improvement, including in hemoglobin A1c levels, intact neurological functions and other normal findings as to joint and muscle pain, normal gait, and lack of lower extremity edema or weakness.  (AR 25 (citing AR 1402, 1412 [Ex. 13F at 8, 18]; AR 575 [Ex. 3F at 13]; AR 1729-30 [Ex. 14F at 1-2]; 458 [Ex. 2F at 57]; AR 581, 584 [Ex. 3F at 19, 22]; AR 599 [Ex. 4F at 6]; AR 1143, 1146 [Ex. 12F at 32, 35]; AR 1730 [Ex. 14F at 2]).)  The decision also finds: her neuropathic pain has been "somewhat controlled" through use of medication; diagnostic imaging of her feet reveals no abnormalities; and that her own reports in her medical records indicate that she has been doing well with diabetes control.  (AR 25 (citing AR 1126, 1208, 1243 [Ex 12F at 15, 97, 132]; AR 563 [Ex. 3F at 1]; AR 1741, 1747 [Ex. 14F at 13, 19].)

The ALJ then discusses the chronic nature of her peripheral neuropathy, the decreased sensation in her feet, and the expectation that the neuropathy will require restrictions on her ability to walk.  (AR 25.)  He goes on to explain that because of the peripheral neuropathy, the RFC includes a sit/stand option, restrictions in standing and walking, and precludes use of her lower extremities to push or pull.  (AR 25 (citing AR 1734, 1752 [Ex. 14F at 6, 24]) ("[n]evertheless, because of the claimant's chronic peripheral neuropathy, its expected restrictions on her ability to walk, and her decreased sensation in her feet, the residual functional capacity . . . includes a sit/stand option, further restricts her standing and walking abilities, and precludes her from using her lower extremities to push or pull.").)

### b)      Other Disorders

The ALJ then addresses "the claimant's other disorders, which she did not allude to during the hearing as disabling," including "numerous alcohol-related abdominal disorders, abdominal pain, GERD erosive duodenitis, liver cirrhosis, cholecystitis, splenomegaly and banding of esophageal varices (AR 25 (citing numerous medical records).)  He explains that by 2016, Plaintiff reported "'feeling quite well,' denied gastrointestinal symptoms, and reported that her GERD symptoms were 'pretty well controlled.'"  (AR 25 (citing AR 563 [Ex. 3F at 1]).)  The decision then concludes that her "[r]ecent clinical visits demonstrate[d] no significant medical complications arising from her abdominal and gastrointestinal issues" and she "continued to deny significant gastrointestinal symptoms" with GERD and duodentis stable and cholelithiasis stable and asymptomatic.  (AR 25 (citing AR 1112-1336, 1741, 1747 [Ex. 12F, 14F at 13, 19]).) The decision reaches similar conclusions regarding benign and simple endometrial hyperplasia, bilateral salpingo-oophorectomy, hypertension, and hyperlipidemia, finding no significant complications or residual limitations as to the former and the hypertension and hyperlipidemia controlled through medication.  (AR 25 (citing AR 600 [Ex. 4F at 7]; 608-610 [Ex. 5F at 7-9]; 932 [Ex. 6F at 217]; 1416 [Ex. 13F at 22]; 571 [Ex. 3F at 9]).) And, as to Plaintiff's obesity, the ALJ finds the evidence does not show Plaintiff's obesity impacts her ability to ambulate or cause disabling health problems.  (AR 25.)

### 3.      ALJ's Evaluation of Medical Opinion Evidence

The decision then discusses the medical opinion evidence, giving little weight to state agency medical consultant Dr. Naiman, partial weight to state agency medical consultant Dr. Ross, and some weight to treating physician Dr. Hampshire.  (AR 25-26.)[3]

///

///

---

[3] Each opinion and their respective restrictions are discussed in more detail below.

### a)   Dr. Naiman

The ALJ gave "little weight to the medium residual functional capacity" assessment from Dr. Naiman.  (AR 26 (citing AR 154-56 [Ex. 1A at 8-10]; 165-67 [Ex. 2A at 8-10]).)  The ALJ found it was inconsistent with Dr. Ross' opinion and not supported by medical records showing chronic peripheral neuropathy symptoms.  (AR 26.)

### b)   Dr. Ross

The ALJ gave "partial weight to the light residual functional capacity assessment" from Dr. Ross, finding it "somewhat supported by the evidence of claimant's numerous medical issues and initial problems controlling her diabetes."  (AR 25.)  However, the ALJ found "further standing and walking limitations were warranted based on claimant's persistent complaints of peripheral neuropathy affecting her feet."  (AR 25-26.)  The ALJ also explained that Dr. Ross had not had an opportunity to review medical records that were only available at the hearing level.  (AR 26.)

### c)   Dr. Hampshire

As to Dr. Hampshire's "Treating Physician Questionnaire,"[4] the ALJ gave it some weight.  (AR 26; AR 1032-34.)  The ALJ found Dr. Hampshire's decreased standing and walking limitations "somewhat supported by the claimant's complaints of neuropathic pain."  (AR 26 (emphasis added).)  However, he goes on to explain that it is not corroborated by the record particularly in light of recent changes.  (AR 26.)  He found Dr. Hampshire's restrictions to less than two hours of standing and walking, only occasionally lifting less than 10 pounds, and one absence per month "lack[ed] corroborative support in the record, especially in light of recent evidence documenting

---

[4] The ALJ refers to Dr. Hampshire's opinion as a "questionnaire" but as discussed below, clearly treats it as a treating physician opinion in evaluating it.  (AR 26.)  The Court refers to it as questionnaire or opinion throughout, but also treats it as a treating physician opinion.

the claimant's recently improved condition and stable physical symptoms."  (AR 26.)

### F.    Step Four

The ALJ decision then concludes, at step four, that Plaintiff is capable of performing her past relevant work as an administrative clerk.  In reaching this conclusion, the ALJ relies on the testimony of a vocational expert.  (AR 26-27.)  The transcript of the hearing reflects the ALJ posed a series of hypotheticals to the vocational expert with each becoming more restrictive in postural limitations, providing a sit/stand option, and the amount of time Plaintiff could stand.  (AR 133-143.)  The ALJ decision explains, and the transcript reflects, that the vocational expert clarified that the sit/stand option is not addressed in the Dictionary of Occupational Titles, but based on her experience on vocational matters doing job analyses and placements.  (AR 26 (ALJ decision); AR 135, 142 (transcript).)  He additionally discusses the vocational expert's testimony that the administrative clerk position is typically a seated position that is only classified "as light, as opposed to sedentary because they require more than two hours of sitting" and that this position would generally not require more than three hours of standing and/or walking."  (AR 26-27.)

## IV.    DISCUSSION

Plaintiff argues the ALJ erred in not including certain restrictions contained in the treating physician opinion of Dr. Hampshire in Plaintiff's RFC.  Plaintiff argues the following work restrictions were imposed in Dr. Hampshire's opinion and should have been included in Plaintiff's RFC: "1) limitations to low stress jobs; 2) occasional (up to 33%) interference in the ability to perform even simple work tasks; 3) need for a sit, stand or walk option at will; 4) sit at least six hours per workday; 5) stand/walk less than two hours per workday; 6) lift and carry less than 10 pounds occasionally; and 7) absenteeism at a rate of one day per month."  (ECF 19-1 at 4-5 (citing AR 1033-34 (portion of Dr. Hampshire's opinion)); *see also* ECF 19-1 at 4-8 (addressing these restrictions).)

Defendant counters that the ALJ was not required to include the limitations to low-stress work with occasional interference with attention and concentration because Dr. Hampshire's check-box form provided no explanation or support for these limitations and Plaintiff cites no medical evidence supporting them.  (ECF 20 at 11.)  Defendant also argues the ALJ properly imposed less restrictive sit/stand, lift/carry, and absence limitations than Dr. Hampshire because her more restrictive limitations failed to consider Plaintiff's improved condition and stability of symptoms, as noted by the ALJ, and were not supported by any medical records.  (ECF 20 at 11-14.)  Additionally, Defendant asserts that the limitations imposed by the ALJ are supported by substantial evidence. (ECF 20 at 14-15.)

### A.    Applicable Standards

#### 1.    Scope of Review

Section 405(g) of the Social Security Act allows unsuccessful claimants to seek judicial review of a final agency decision.  42 U.S.C. § 405(g).  This Court has jurisdiction to enter a judgment affirming, modifying, or reversing the Commissioner's decision.  *See id.*; *see also* 20 C.F.R. § 404.900(a)(5).  The matter may also be remanded to the Social Security Administration for further proceedings.  42 U.S.C. § 405(g).

If the Court determines that the ALJ's findings are not supported by substantial evidence or are based on legal error, the Court may reject the findings and set aside the decision to deny benefits.  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001).  "Substantial evidence is 'more than a mere scintilla,' and means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).  "If the evidence 'is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.'"  *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).

///

///

The Court "must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citation omitted). The Court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). However, "[w]hen evidence reasonably supports either confirming or reversing the ALJ's decision, we may not substitute our judgment for that of the ALJ." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

The ALJ's decision may be affirmed "even if the ALJ made an error, so long as the error was harmless, meaning it was 'inconsequential to the ultimate nondisability determination.'" *Ford*, 950 F.3d at 1154 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008)).

## 2. Treating Physician Opinion

Here, the physician opinion at issue was provided by Plaintiff's treating physician, Dr. Hampshire. "'As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant,'" and "the opinion of an examining physician is entitled to greater weight than that of a non-examining physician."[5] *Garrison*, 759 F.3d at 1012 (quoting *Lester*, 81 F.3d at 830 and citing *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). "Because treating physicians are employed to cure and thus have greater opportunity to know and observe the patient as an individual their opinions are given greater weight than the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996)

---

[5] The Ninth Circuit "distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

(citing *Rodriguez v. Bowen*, 876 F.2d 759, 761-62 (9th Cir. 1989) and *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).[6]

However, "the ALJ need not accept the opinion of a treating physician." *Ford*, 950 F.3d at 1154; *see also Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) ("[W]e have held that the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability.") (citations omitted). "'[I]f the treating doctor's opinion is contradicted by another doctor,' the ALJ may discount the treating physician's opinion by giving 'specific and legitimate reasons' that are supported by substantial evidence in the record." *Ford*, 950 F.3d at 1154 (quoting *Lester*, 81 F.3d at 830); *see also  Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).[7]

---

[6] Because Plaintiff's "claim was filed prior to the Commissioner's revision of the rules for evaluating medical evidence at the administrative level," it is subject to the standards set forth in § 404.1527. *Smith v. Kijakazi*, 14 F.4th 1108, 1114 n.3 (9th Cir. 2021); (*see also* ECF 20 at 9 n.3 (Defendant's brief noting the pre-March 27, 2017 standards apply).) The standards set forth here are the standards applicable to a claim filed before March 27, 2017. 20 C.F.R. § 404.1520c ("For claims filed before March 27, 2017, the rules in [20 C.F.R.] § 1527 apply.")  Claims filed on or after March 27, 2017 are subject to § 404.1520c's revised rules which do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)."  § 404.1520c.

[7] A higher standard applies when an ALJ rejects an *uncontradicted* treating physician opinion.  "To reject the uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Trevizo*, 871 F.3d at 675 (quoting *Ryan*, 528 F.3d at 1198).  But here, Plaintiff argues the *specific and legitimate* reasons standard applies, and as discussed below, Dr. Hampshire's opinion was contradicted by the opinions of Dr. Ross, Dr. Naiman, and medical evidence in the record cited and discussed by the ALJ.  (ECF 19-1 at 6 (Plaintiff's brief) ("Generally, an ALJ is not bound by the opinions of a treating physician.  However, if an ALJ chooses to reject the treating physician's opinion, the ALJ must articulate *specific and legitimate* reasons based on substantial evidence in the record.") (emphasis added) (citing *Lester*, 81 F.3d at 830-31); ECF 19-1 at 7 ("The ALJ failed to articulate a single reason let alone *specific and legitimate reasons*, for rejecting these treating opinions, which is error.") (citing *Lester*, 81 F.3d at 830-31 and *Hill v. Astrue*, 688 F.3d 1144, 1150-51 (9th Cir. 2012)); *see supra* III.E.2 (ALJ's discussion of medical evidence showing normal and intact functions as well as improvement and stabilization of

"The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings." *Tommasetti*, 533 F.3d at 1041 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957.  The ALJ "must set forth his own interpretations and explain why they, rather than the [treating or examining] doctors, are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).

Additionally, "an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings."  *Batson*, 359 F.3d at 1195 (citing *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) and *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001)); *see also Ford*, 950 F.3d at 1154 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (quoting *Thomas*, 278 F.3d at 957).

**B.    Analysis**

The Court first discusses the ALJ's analysis and how it provides specific and legitimate reasons supported by substantial evidence for discrediting Dr. Hampshire's opinion and not including every one of her restrictions in Plaintiff's RFC.  The Court then addresses the particular restrictions at issue further.

**1.    ALJ's Evaluation of the Medical Evidence and Physician Opinions**

The ALJ found Dr. Hampshire's opinion lacked corroboration in the record and failed to account for medical evidence of improvement and stable physical symptoms.  (AR 26.)  The ALJ also evaluated two other physician opinions with lesser restrictions

symptoms); *see infra* IV.B.1 (discussing conflicts in the opinions and with the medical evidence) .

than those assessed by Dr. Hampshire and evaluated the medical evidence as to Plaintiff's diabetes and peripheral neuropathy.  (AR 24-26.)  The ALJ's analysis of the medical records, the three opinions, and the conflicts among the opinions provide specific and legitimate reasons supported by substantial evidence for discrediting Dr. Hampshire's opinion to the extent the ALJ did and for not including all of Dr. Hampshire's restrictions in Plaintiff's RFC.

The Court first discusses the ALJ's evaluation of the medical evidence because it precedes and supports the ALJ's evaluation of Dr. Hampshire's opinion.  The Court then addresses the ALJ's evaluation of the three medical opinions, conflicts among them, and how the ALJ's findings as to the medical evidence and conflicts in the opinions support discrediting Dr. Hampshire's opinion to the extent the ALJ did.

### a)      ALJ's Evaluation of the Medical Evidence

The ALJ's discussion of Plaintiff's diabetes and peripheral neuropathy not only supports the restrictions he imposed, but also not including more restrictive limitations in Dr. Hampshire's opinion.  (AR 24-25; *see supra* III.E.)  The ALJ summarized the medical evidence and made findings as to Plaintiff's diabetes and peripheral neuropathy with citation to medical records in support of his findings.  (AR 24-25.)  The ALJ's findings as to peripheral neuropathy and diabetes[8] are particularly significant because Dr. Hampshire's questionnaire lists only diabetes and peripheral neuropathy as diagnoses her opinion is based on and Plaintiff testified that the neuropathy and its impact on her feet, was the reason she could not work.  (AR 1032 (question #2); AR 125, 127.[9])

---

[8] The ALJ also thoroughly considered all of Plaintiff's other medical conditions and made similarly specific findings based on the medical records to conclude that her other conditions were resolved, improving, and stable, and support the RFC assessed.  (AR 25; *see supra* III.E.2.)

[9] When asked by her counsel at the hearing, "Any other medical reasons that prevent you from working on a full-time basis? Plaintiff responded "No, just the neuropathy is my main problem."  (AR 125.)  And, when asked "any problems using your hands . . . or was it just your feet that precluded work? Plaintiff responded "It was the feet."  (AR 127.)

1    As detailed below, the decision provides a "detailed and thorough summary" of
2  Plaintiff's medical history with findings that include citation of relevant medical records,
3  the ALJ's interpretation of them, and consideration of medical opinions. *Tommasetti*,
4  533 F.3d at 1041 (The ALJ can meet the specific and legitimate reasons standard by
5  "setting out a detailed and thorough summary of the facts and conflicting evidence,
6  stating [his] interpretation thereof, and making findings."); *see also Thomas*, 278 F.3d at
7  957 ("The opinions of non-treating or non-examining physicians may also serve as
8  substantial evidence when opinions are consistent with independent clinical findings or
9  other evidence in the record.").

10    The ALJ does not select a few positive medical records to the exclusion of the
11  negative or provide only a brief summary of medical history without any interpretation or
12  findings. Rather, the ALJ notes her history of type two diabetes and peripheral
13  neuropathy with citation to applicable medical records, but also discusses, with citation to
14  medical records, her improvement, stabilization of symptoms, and normal and intact
15  functions. (AR 24-25; *see supra* III.E.2.a).) The ALJ specifically discusses medication
16  changes and improvement while also acknowledging earlier periods when Plaintiff's
17  diabetes was uncontrolled. (AR 24-25; *see supra* III.E.2.a).) The decision then goes on
18  to specifically note her recent A1c level improvement. (AR 25; *see supra* III.E.2.a).)

19    When discussing Plaintiff's peripheral neuropathy, the ALJ identifies numerous
20  medical records that show Plaintiff has "grossly intact neurological functions, no joint or
21  muscle pains, no lower extremity edema, no weakness, . . . a normal gait," and that
22  diagnostic imaging of her feet reveal no abnormality. (AR 25; *see supra* III.E.2.a).)
23  Additionally, again with citation to numerous medical records that support his findings,
24  the ALJ finds Plaintiff has reported in medical records that she is doing well with
25  diabetes control and finds and that her neuropathic pain has been somewhat controlled
26  through medications. (AR 25; *see supra* III.E.2.a).) However, the ALJ also finds
27  Plaintiff's chronic peripheral neuropathy causes decreased sensation in her feet,
28  neuropathic pain, and restrictions on her ability to walk. (AR 25; *see supra* III.E.2.a).)

Plaintiff may view these findings differently, but "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti*, 533 F.3d at 1038.  Here the ALJ's interpretation is at a minimum a rational one based on numerous cited medical records.

The ALJ then explains that "the residual functional capacity assessed herein includes a sit/stand option, *further* restricts her standing and walking abilities, and precludes her from using her lower extremities to push or pull." (AR 25 (emphasis added).)  Having reviewed the ALJ's analysis of the physician opinions and the opinions themselves, discussed further below, it is clear the ALJ's reference to "further" restrictions is the ALJ finding Plaintiff's RFC should include more restrictive standing and walking limitations than Dr. Ross assessed.  (*See supra* III.D (RFC – 3 hours standing/walking with a sit stand option); *see infra* IV.B.1.b)(1) (Dr. Ross – 6 hours standing/walking).)

The ALJ summarized the medical records concerning Plaintiff's diabetes and peripheral neuropathy, including records showing normal functions in key areas, recent improvement, and stabilization of symptoms.  (AR 25-26; *see supra* III.E.2.a).)  The ALJ finds she has improved in managing her diabetes and that her neuropathic pain is somewhat controlled with medication, but her neuropathy still requires greater restrictions than assessed by Dr. Ross in one respect, standing/walking limitations, including a sit/stand option.  (AR 25-26.)  These findings reflect the ALJ thoroughly considered the medical records that were the basis for Dr. Hampshire's opinion and concluded that they warranted some greater restrictions as to standing and walking, but did not corroborate Dr. Hampshire's more extreme restrictions.  Based on this analysis of the medical evidence, the ALJ concluded the chronic neuropathy and associated pain supported only two greater restrictions than Dr. Ross found, *i.e.* 3 hours standing/walking instead of 6 and a sit/stand option.

### b) ALJ's Evaluation of the Physician Opinions

The conflicts in the medical opinions of Dr. Naiman, Dr. Ross, and Dr. Hampshire, and the ALJ's analysis of them also provide specific and legitimate reasons for discrediting Dr. Hampshire's opinion to the extent the ALJ did and imposing less restrictive limitations than those selected on Dr. Hampshire's questionnaire.

### (1) Analysis of Dr. Naiman and Dr. Ross' Opinions

Dr. Naiman indicated Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, and stand/walk 6 hours in an 8-hour workday with normal breaks. (AR 154 [Ex. 1A at 8]; 165 [Ex. 2A at 8].)  These were the least restrictive limitations of the physician opinions.  The ALJ gave the opinion little weight because it failed to account for Plaintiff's chronic peripheral neuropathy and because it conflicted with Dr. Ross' opinion.  (AR 26.)  This is consistent with the ALJ's earlier finding that Plaintiff's chronic peripheral neuropathy, neuropathic pain, and decreased sensation in her feet required more restrictive standing/walking limitations. (*See supra* IV.B.1.a.)

As noted above, Dr. Ross' opinion also contained a 6-hour standing/walking time but more restrictive limits in the amount of weight Plaintiff could lift/carry.  (AR 177 [Ex. 4A at 7] (Dr. Ross indicating Plaintiff could occasionally lift/carry 20 pounds, frequently lift 10 pounds, and stand/walk 6 hours in an 8-hour workday with normal breaks).)  The ALJ gave it only partial weight because it failed to account for Plaintiff's persistent complaints of peripheral neuropathy *in her feet* and because Dr. Ross did not have the opportunity to review medical records only made available at the hearing level. (AR 25-26 (emphasis added).)  The ALJ found Dr. Ross' opinion "somewhat supported by the evidence of claimant's numerous medical issues and *initial* problems controlling her diabetes."  (AR 25 (emphasis added).)

Again, this analysis is supported by the ALJ's earlier discussion of the medical evidence and findings concerning Plaintiff's peripheral neuropathy, both the positive and negative.  The ALJ's imposition of restrictions similar to Dr. Ross' is consistent with the ALJ's findings that Plaintiff's medical records show largely intact and normal function

18

by Plaintiff, including normal neurological function, no joint or muscle pain, no lower extremity edema, no weakness, and normal gait. (AR 25.) The only area where the ALJ diverges from Dr. Ross' opinion is on Dr. Ross' standing/walking limitations. The ALJ finds Plaintiff can only stand/walk three hours in an eight-hour workday with a sit/stand option (AR 23) instead of standing/walking six hours in an eight-hour workday. (AR 177 (Dr. Ross' opinion).) As noted above, the reason for this difference is also explained in the ALJ evaluation of the medical evidence (finding further limits needed for decreased sensation in feet and based on her ability to walk) and in evaluating Dr. Hampshire's opinion, as discussed further below.

The ALJ has identified a single area where he believes, based on Dr. Hampshire's opinion and Plaintiff's testimony regarding neuropathy in her feet, that further restrictions than those imposed by Dr. Ross are warranted. And he has reached this conclusion through consideration of the medical evidence, Plaintiff's complaints, and the other opinions in the record.

### (2)   Analysis of Dr. Hampshire's Opinion

Dr. Hampshire's opinion indicates Plaintiff could only stand/walk less than 2 hours in an 8-hour workday, would need to shift position from sitting, standing, or walking at will, could occasionally lift less than 10 pounds and never lift any greater weight, would be absent from work on average one day per month, is limited to low stress jobs, and Plaintiff's symptoms would be severe enough to interfere with the attention and concentration needed for simple tasks occasionally (defined as 6-33% of the time on the form). (AR 1033-34 [Ex. 9F at 4].) None of these restrictions includes any explanation for them on the form even as to the question that specifically asks for an explanation. (AR 1033-34.)[10]

---

[10] As discussed further below, the only "clinical findings and objective signs" identified on the questionnaire are "decreased sensation feet . . . on exam . . . pain is neuropathic,"

The decision identifies the one area where the ALJ is giving Dr. Hampshire's opinion "some weight," standing/walking limitations, and also explains why he is discrediting it.  (AR 26; *see supra* III.E.3.c).)  The ALJ noted the lengthy treating relationship and finds her "questionnaire" responses "somewhat supported by claimant's complaints of neuropathic pain."  (AR 26.)  The ALJ then goes on to explain reasons for discrediting it – the lack of corroborative support in the record for other restrictions.  (AR 26.)  The decision specifically singles out the restrictions "to less than two hours of standing and walking, . . . only occasionally lift[ing] less than 10 pounds, and . . . one absence a month."  (AR 26.)  The ALJ indicates this is "especially [so] in light of recent evidence documenting the claimant's recently improved condition and stable physical symptoms."  (AR 26.)

Again, the ALJ's earlier findings as to what the medical evidence shows support the ALJ's rejection of Dr. Hampshire's more restrictive limitations.  First, the Court notes that Dr. Hampshire's opinion concerns diagnoses the ALJ has discussed and made findings about, diabetes and peripheral neuropathy, and the neuropathy is Plaintiff's primary issue.[11]  (*See supra* IV.B.1.a)  The ALJ has already discussed the medical evidence regarding these conditions and identified the two additional restrictions he finds appropriate for those conditions.  Second, the ALJ gave some weight to only one portion of Dr. Hampshire's opinion.  The ALJ found the opinion was "somewhat supported by claimant's complaints of neuropathic pain," but lacking corroboration in the record and that her opinion failed to account for initial noncompliance, improvement, and stabilization of symptoms.  (AR 26; *see supra* III.E.3.c).)  This is completely consistent with and supported by his analysis of Plaintiff's peripheral neuropathy, *i.e.* his

_____

and the only other explanations are listings of foot pain and lack of sensation affecting walking.  (AR 1032; *see infra* IV.B.2.)

[11] When asked at her hearing, "Any other medical reasons that prevent you from working on a full-time basis? Plaintiff responded "No, just the neuropathy is my main problem." (AR 125.)

conclusion, after lengthy discussion, that her diabetes was controlled, neuropathic pain somewhat controlled, and her records on these conditions largely in normal and intact functions.  (AR 24-25.)

He imposed greater restrictions than found by Dr. Ross, which did not include the sit/stand option, based on Plaintiff's peripheral neuropathy.  However, the ALJ's restrictions do not go as far as Dr. Hampshire's because greater restrictions from neuropathy are not supported by the medical records he identified and discussed.  This is clear not only from his explanation that Dr. Hampshire's opinion is not consistent with Plaintiff's improved condition and stable symptoms, but also from his finding that Plaintiff's diabetes is better controlled and improving, neuropathic pain somewhat controlled, and otherwise normal and intact neurological functions, lack of joint or muscle pain, lack of lower extremity edema, lack of weakness, and a normal gait.  (AR 25.)

The ALJ's analysis of the medical opinions collectively reflects the ALJ found the least restrictive opinion provided by Dr. Naiman failed to account for Plaintiff's chronic neuropathy and the most restrictive opinion provided by Dr. Hampshire, lacked corroboration in the record and failed to account for Plaintiff's improvement and stability of symptoms.  (AR 25-26.)  And, the ALJ has weighted and discredited the opinions according to those findings.  (AR 25-26.)  When viewed in the context of the entire ALJ decision, it is apparent the ALJ discredited Dr. Hampshire's opinion not only because it "lack corroborative support" as to her restrictions but also because the collective medical opinions and medical records did not support any further limitations.  The ALJ relied on differences in the medical opinions and lack of support or corroboration in the medical records in determining how much weight to give to each one, including Dr. Hampshire's, and which restrictions to impose.  In addition to providing a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings," the ALJ has relied on non-examining physician opinions consistent with other evidence in the record, and the ALJ has "set forth his own

interpretations and explain[ed] why they, rather than [Dr. Hampshire's] are correct." *Tomasetti*, 533 F.3d at 1041 (detailed and thorough summary); *Thomas*, 278 F.3d at 957 (non-examining physician opinions); *Reddick*, 157 F.3d at 725 (own interpretation).

### 2. Restrictions

The parties both asserted additional arguments regarding some of the specific restrictions identified in Dr. Hampshire's opinion. For ease of analysis, the Court groups them as follows : (1) the standing/walking, lift/carry, and one absence per month restrictions and (2) the low stress and symptoms severe enough to interfere with attention and concentration needed for simple tasks occasionally.

### a) Standing/Walking, Lift/Carry, and Absence Limitations

As detailed above, the ALJ's limitations on Plaintiff's ability to lift/carry weight, her standing/walking limitations, and her average absences per month were less restrictive than the limitations in Dr. Hampshire's opinion. (*See supra* IV.B.1.b)) The ALJ found Plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently," while Dr. Hampshire indicated Plaintiff could never lift 10 pounds or more and only occasionally lift less than 10 pounds. (AR 23 (ALJ RFC); AR 1034 (Dr. Hampshire opinion).) The ALJ found Plaintiff could "stand and/or walk for 3 hours in a normal 8-hour day," and required a "sit/stand option from standing or walking after every 15 minutes to sitting for at least 15 minutes." (AR 23 (ALJ decision).) Dr. Hampshire indicated Plaintiff could only stand/walk less than 2 hours in an 8-hour workday" and would need a "job that permits shifting positions *at will* from sitting, standing, or walking." (AR 1033 (emphasis in original).) And, Dr. Hampshire indicated Plaintiff would likely be absent from work one day per month as a result of her impairments or treatment (AR 1034), while the ALJ did not include an absence restriction. (AR 23.)

The Court first individually addresses Plaintiff's assertion that the ALJ substituted his own interpretation of the medical evidence for Dr. Hampshire's in determining Plaintiff could stand/walk 3 hours in an 8-hour workday with a sit stand option every 15 minutes. Plaintiff argues that the "the ALJ's assessment that [Plaintiff] could stand/walk

three hours per workday, and would need a sit/stand option are unsupported by any medical source in the record." (ECF 19-1 at 8.) However, it is apparent the ALJ's limitations fall squarely between the opinion of Dr. Ross (six hours standing/walking in an 8-hour workday) and Dr. Hampshire (2 hours standing/walking in an 8-hour workday with sitting, standing, and walking at will) and take into account Plaintiff's complaints regarding neuropathic pain and Plaintiff's medical records, as discussed at length above.

The ALJ was not required to pick one opinion to the exclusion of every other opinion provided. Rather, the ALJ, must consider all the evidence before it and determine what the ALJ assesses, based on all the evidence, is the most a claimant is capable of doing. 20 C.F.R. § 404.1545(a)(1)(2) (Claimant's RFC is "the most [they] can still do despite [their] limitations" considering "*all the relevant evidence*," including "all medically determinable impairments of which [the Social Security Administration] is aware.") (emphasis added). And, this Court is not permitted to "substitute [its] judgment for that of the ALJ . . . [w]hen evidence reasonably supports either confirming or reversing the ALJ's decision." *Batson*, 359 F.3d at 1196; *see also Ford*, 950 F.3d at 1154 ("If the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.") (citations omitted).

Here, it is clear that the ALJ was giving some weight to Dr. Hampshire's questionnaire response regarding how much Plaintiff could stand/walk in an 8-hour workday and the need to switch from sitting to standing at will. The ALJ's analysis of both opinions gave some weight to Dr. Hampshire and Dr. Ross which indicates he took into consideration Plaintiff's persistent complaints regarding pain from peripheral neuropathy. (AR 26 ("*further* standing and walking limitations warranted based on claimant's persistent complaints of peripheral neuropathy affecting her feet") (analyzing Dr. Ross' opinion); AR 26 ("[O]pinion regarding . . . decreased standing and walking limitations *somewhat supported* by the claimant's complaints of neuropathic pain") (analyzing Dr. Hampshire opinion) (emphasis added).) It is also clear from this explanation that he considered Plaintiff's self-described "main problem," peripheral

neuropathy.  (AR 125 (When asked "[a]ny other medical reasons that prevent you from working on a full-time basis?" she responded "[n]o, just the neuropathy is my main problem.").)

The ALJ did not substitute his own opinion in place of any of the physician opinions, including Dr. Hampshire's.  Rather, he arrived at limitations that took into consideration the two medical opinions in the record that he gave some weight to, Plaintiff's medical records, and Plaintiff's complaints regarding her primary issue, peripheral neuropathy.

The same is true for the lift/carry and absence limitations.  Dr. Ross found Plaintiff could occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds and did not indicate Plaintiff would be absent from work once a month.  (AR 117 (Dr. Ross).)  These are the same limitations imposed in the RFC. (AR 23 (ALJ RFC); *see supra* III.D. (Court's discussion of RFC).)  This is supported not only by Dr. Ross' opinion, but also by the medical evidence, Plaintiff's testimony, and Dr. Hampshire's opinion itself.

The ALJ notes Dr. Hampshire's more limited restriction to less than 10 pounds occasionally and one absence per month, along with her standing/walking limitations, and then explains those restrictions are not corroborated by the record, specifically noting recent evidence documenting Plaintiff's improved condition and stable physical symptoms.  (AR 26.)  As discussed above, (*see supra* IV.B.1.a)), the ALJ evaluated the medical evidence regarding Plaintiff's diabetes and neuropathy (the two diagnoses identified on Dr. Hampshire's questionnaire) and found Plaintiff diabetes control had been improving and her neuropathic pain was somewhat controlled with medication.[12]

---

[12] As discussed above, Dr. Hampshire's restrictions were based on Plaintiff's diabetes and neuropathy, the only diagnoses identified in Dr. Hampshire's opinion.  But, to the extent any of her restrictions were based on any of Plaintiff's other disorders without identifying them, the ALJ's discussion of the lack of current disabling symptoms or complications associated with the other disorders provides a specific and legitimate reason supported by

As discussed above, the ALJ's evaluation of the medical evidence supports discrediting Dr. Hampshire's opinion and not adopting her restrictions. (*See supra* IV.B.1.) This analysis is particularly persuasive on the lift/carry and absence restrictions because the ALJ explicitly stated they were not corroborated by the record and identified improvement and stabilization of physical symptoms as a basis. (*See supra* IV.B.1.; AR 26.)

Additionally, there is no support for these limitations in Dr. Hampshire's opinion or in the record. Defendant accurately notes that Dr. Hampshire's opinion does not identify any records or even provide any explanation supporting Plaintiff only being able to lift 10 pounds occasionally or being absent once a month. (ECF 20 at 11 (citing AR 1034).) These items are simply checked off on the form without any explanation or identification of records in support. (AR 1034.) The same is true of the stand/walk limitations, but at least the stand/walk limitations are related to Plaintiff's neuropathy in her feet, as discussed by the ALJ. As noted above, the opinion states "decreased sensation [in] *feet* . . . on exam . . . pain is neuropathic" in response to the question "[i]dentify the clinical findings and objective signs:" (AR 1032 (emphasis added).) The only explanations in the opinion, brief as they are, regard Plaintiff's feet and walking. (AR 1032-33 (questions 4-6, 13-14).) However, there is nothing in the questionnaire related to Plaintiff's hands, arms, or anything else that might explain such an extreme limitation in the weight she could lift or carry or the absence limitation. The opinion itself and Plaintiff's own testimony actually suggests the opposite as to the lift/carry restriction. The opinion indicates she has normal grip strength and fine dexterity and Plaintiff herself testified she had no problems using her hands and that was just her feet

---

substantial evidence for not including any additional restrictions associated with those disorders in Plaintiff's RFC.

that precluded work.  (AR 127; *see also* ECF 20 at 11 (citing AR 1034 and AR 127).)
The ALJ noted the same in his discussion of Plaintiff's testimony.[13]  (*See supra* III.E.1.)

The ALJ did not err in not including these limitations from Dr. Hampshire's
opinion in the RFC.  The ALJ arrived at sitting/standing, lift/carry, and absence
limitations based on his evaluation of the medical evidence and the opinions of Dr. Ross
and Dr. Hampshire and, as discussed above, the ALJ's analysis provides specific and
legitimate reasons supported by substantial evidence for discrediting Dr. Hampshire's
opinion to the extent he did. (*See supra* IV.B.1.)

### b)      Low Stress and Attention/Concentration Limitations

Plaintiff does not explain what if any medical condition supports limiting Plaintiff
to low-stress jobs or would cause symptoms severe enough to occasionally (6%-33% of
the time) interfere with the attention and concentration needed to perform simple work
tasks.  Plaintiff argues the ALJ ignored these limitations and asserts there would not be
jobs available for Plaintiff if these restrictions were imposed, but does not provide any
basis for the restrictions.  (ECF 19-1 at 7 (ignored), 5-6 (no jobs available).)  Even when
faced with Defendant's argument that where was no support for them in Dr. Hampshire's
opinion or the record, Plaintiff did not address this point.  (ECF 20 at 11.)

Defendant argues the ALJ was permitted to reject these restrictions because
Plaintiff did not allege a disabling mental health condition, there is no support for them in
Plaintiff's medical records, they were provided on a check-box form, and Dr. Hampshire
provided no further explanation in support of these restrictions.  (ECF 20 at 11.)  The
Court largely agrees and also finds the ALJ's analysis of Plaintiff's diabetes and
peripheral neuropathy, the only possible basis for these restrictions, supports not
including these limitations in Plaintiff's RFC.

---

[13] When asked by her counsel "any problems using your hands then or was it just your
feet that preclude work," she said that "[i]t was the feet."  (AR 127.)

First, as noted by Defendant in Opposition, and not addressed in a reply from Plaintiff, Plaintiff identifies no explanation in Dr. Hampshire's opinion or medical records that support these restrictions. (ECF 20 at 7.) In fact, Plaintiff does not even explain any basis, even without citation, for either of these limitations. They seem completely untethered from any of the medical records or medical opinions. Additionally, Dr. Hampshire's opinion also provides no explanation for either of these restrictions. (AR 1033.) As to the low-stress limitation, she is specifically requested to "Please explain the reasons for your conclusion" on the form, but provides none. (AR 1033.) This in itself would be a sufficient basis to exclude these limitations. *Batson*, 359 F.3d at 1195 ("[A]n ALJ may discredit treating physician opinions that are conclusory, brief, an unsupported by the record as a whole, or by objective findings."). As to these restrictions, Dr. Hampshire's opinion is conclusory, brief, and unsupported by the record or objective findings.

Second, to the extent Plaintiff is suggesting that the ALJ was required to specifically address these restrictions despite no support or explanation for them in the opinion or by Plaintiff, the Court disagrees. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (9th Cir. 1996) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir.1984)). "Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* (citing *Vincent*, 739 F.2d at 1394-95 and *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir. 1984) ("a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position").

As detailed above, the ALJ thoroughly discussed the medical evidence and medical opinions regarding Plaintiff's neuropathy. The record reflects he considered all the evidence, significantly here regarding her neuropathy, as well as Dr. Hampshire's

opinion. Further analysis regarding restrictions that have no support or explanation was not required. These checked off restrictions with no further explanation or even a reference to the diagnosis they are based on are not significant probative evidence the ALJ was required to discuss to reject. *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) ("[I]n reaching [a] decision, the Secretary may not reject 'significant probative evidence' without explanation.") (quoting *Vincent*, 739 F.2d at 1395); *see also Batson*, 359 F.3d at 1195 ("ALJ may discredit treating physician opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical evidence.").

Defendant also notes the lack of explanation from Dr. Hampshire on these limitations is significant because Plaintiff never asserted at any point in the proceedings that she had any mental impairments that would limit her to low-stress jobs or cause symptoms severe enough to interfere with the attention and concentration needed for simple work task 6-33% of the time. The only reference the Court can find to a mental health impairment is Dr. Hampshire checking off "Depression" on the form, but it is followed by "pain causing depression" written next to it, suggesting it is associated with Plaintiff's neuropathy. (AR 1032.) The only references to pain in the opinion or in Plaintiff's testimony are associated with the neuropathy. (AR 1032-33.) However, even if the Court puts aside the lack of depression or any mental health condition asserted as a condition limiting her ability to work at any point in the disability proceedings,[14] Defendant accurately points out that Plaintiff's medical records would not support work restrictions based on depression. (ECF 20 at 11.) Plaintiff rarely if ever even complained of symptoms associated with depression. (ECF 20 at 11 (citing AR 581, 1136, 1143, and 1752) (medical records noting either no depression or mood only slightly depressed).) Even if the Court assumed a diagnosis not claimed by Plaintiff in the disability

---

[14] The only conditions identified as a basis for Plaintiff not being able to work throughout the disability application process were diabetes, high cholesterol, neuropathy, and high blood pressure. (*See supra* II.)

application process or advanced as a basis in her briefing before this Court, it would not be supported by medical evidence or Dr. Hampshire's opinion.

A conclusive opinion not based on evidence is not entitled to any weight. *See Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation."); *see also Farris v. Comm'r of Soc. Sec.*, No. 1:11-CV-258, 2012 WL 1552634, at *8 (S.D. Ohio Apr. 30, 2012) ("Dr. Swope's opinion was not based on this evidence and the ALJ was not required to give his opinion any greater weight due to its lack of supporting evidence."), *report and recommendation adopted sub nom. Farris v. Comm'n of Soc. Sec.*, No. 1:11-CV-258, 2012 WL 1884232 (S.D. Ohio May 22, 2012). The Court is not going to manufacture an explanation or cobble together evidence in support of restrictions neither Dr. Hampshire nor Plaintiff has explained or supported.

Even if the Court presumes the limitations to low-stress and having severe enough symptoms to interfere with attention and concentration occasionally are a result of Plaintiff's peripheral neuropathy and diabetes, the ALJ did not err in not including them. (AR 1032 (question #2 – Diagnoses).) As discussed above, the ALJ discussed Plaintiff's peripheral neuropathy in detail in discrediting Dr. Hampshire's opinion and in determining what restrictions were necessary and did not include these. (*See supra* IV.B.1.) To the extent these restrictions were based on Plaintiff's neuropathy, they were properly excluded by the ALJ. As discussed at length above, the ALJ thoroughly analyzed Plaintiff's medical records concerning her diabetes and neuropathy, made findings, considered the medical opinions based on those conditions and determined which restrictions were supported. (*See supra* IV.B.1.) As detailed above, there is no support for these restrictions in the medical records or any physician opinion[15] and the

---

[15] These types of restrictions might have been addressed by Dr. Ross or Dr. Naiman had Plaintiff identified a mental health condition as a condition preventing her from working,

ALJ is not required to "accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and *inadequately supported by clinical findings*. *Ford*, 950 F.3d at 1154 (citations omitted) (emphasis added).

## V.  Notice of New Authority

After the summary judgment briefing was complete, Plaintiff filed a two page "Notice of New Authority" with citation to *Collins v. Yellen*, 141 S. Ct. 1761, 1783-84 (2021) and *Seila Law LLC v CFPB*, 140 S. Ct. 2183, 2192 (2020). (ECF 21).

Plaintiff notes these decisions and an Office of Legal Counsel (OLC) decision "cast significant doubt onto the constitutionality of the appointment of the Commissioner of Social Security." (ECF 21 at 1 (citing *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 45 Op. O.L.C. (July 8, 2021).)  Plaintiff indicates that "Andrew Saul held the office of Commissioner of Social Security as the sole person dischargeable only for cause between July 17, 2019 and July 11, 2021" and that Plaintiff "filed this claim on October 27, 2016, participated in a hearing on September 4, 2018, received a decision dated January 9, 2019, and received a denial of request for review dated December 10, 2019." (ECF 21 at 1-2.)

Although not explicitly stated, the Court can deduce Plaintiff is arguing that because Andrew Saul's appointment was unconstitutional, he lacked the authority to issue decisions, like the one issued here, as to eligibility for benefits.  The Ninth Circuit addressed this issue in an opinion issued on April 27, 2022. *Kaufman v. Kijakazi*, 32 F.4th 843 (9th Cir. 2022).  While the court found the removal provision "violates separation of powers principles," it also found it severable and that a "[c]laimant . . . must demonstrate that the unconstitutional provision actually caused her harm." *Id.* at 849 ("[U]nless a claimant demonstrates actual harm, the unconstitutional provision has no effect on the claimant's case.").

_____

but understandably, neither opined on them given the only conditions identified as the basis for disability (diabetes, high cholesterol, neuropathy, and high blood pressure).

Plaintiff has relied only on Andrew Saul being Commissioner at the time decisions were made regarding her claim for disability.  (ECF 21 at 1-2.)  There is no basis for finding actual harm to claimant from the removal provision.  When, as here, "[n]othing in the record suggests any link whatsoever between the removal provision and the claimant's case," the removal provision does not impact the validity of the ALJ decision.

## VI.    CONCLUSION

Based on the above reasoning, Plaintiff's motion for summary judgment (ECF No. 19) is **DENIED** and the Commissioner's cross-motion for summary judgment (ECF No. 20) is **GRANTED**.

**IT IS SO ORDERED.**

Dated:  May 23, 2022

_____
Hon. Bernard G. Skomal
United States Magistrate Judge